**TYSON FOODS, INC. and Holly Acquisition Corp., Plaintiffs–Appellees,**

v.

**Elaine A. McREYNOLDS and Charles W. Burson, Defendants,**

**Holly Farms Corp., Defendant–Appellant.**

No. 88–6343.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 28, 1988.

Decided Jan. 10, 1989.

Ames Davis, Waller, Lansden, Dortch & Davis, Nashville, Tenn., Roderick H. Willcox, James J. Chester (argued), John J. Chester, Donald C. Brey, Chester, Hoffman, Willcox & Saxbe, Columbus, Ohio, for Tyson Foods, Inc. & Holly Acquisition Corp., plaintiffs-appellees.

John K. Maddin, Jr., Gracey, Maddin, Cowan & Bird, Nashville, Tenn., Paul Vizcarrondo, Jr. (argued), Wachtell, Lipton, Rosen, & Katz, New York City, for Holly Farms Corp., defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Tyson Foods, Inc., through its wholly owned subsidiary, Holly Acquisition Corp., both Delaware corporations, has made a nationwide tender offer for the common shares of Holly Farms Corp., also a Delaware corporation. Holly Farms seeks a stay and/or expedited appeal of the district court's preliminary injunction preventing Holly Farms from enforcing or attempting to enforce the Tennessee Investor Protection Act, the Tennessee Business Combination Act, the Tennessee Control Share Acquisition Act, or the Tennessee Authorized Corporation Protection Act.[1] 700 F.Supp. 906. On this expedited appeal, we affirm the district court's limited holding that the four Tennessee statutes violate the Commerce Clause of the United States Constitution to the extent that they apply to target corporations organized under the laws of states other than Tennessee.

On October 21, 1988, Tyson commenced its all cash offer for all shares of Holly Farms stock. Such offer was made to all Holly Farms shareholders throughout the United States and elsewhere. The offer was advertised nationally by use of the financial press and by interstate mail. The tender offer and the loan commitment pursuant to which the acquisition would be financed stated as a condition that Tyson

not be threatened with the business combination or control share effects allegedly produced by the Tennessee statutes which the State of Tennessee was prepared to enforce.[2] Tyson intended to propose a merger with Holly Farms if its tender offer was successful.

Holly Farms is organized as a Delaware corporation with principal executive offices located in Memphis, Tennessee. Its principal products are fresh and frozen chicken products. Holly Farms' shares of common stock are listed on the New York, Philadelphia, and Pacific Stock Exchanges. Holly Farms conducts operations through subsidiaries incorporated in ten states and has facilities in twenty-two states. Holly Farms opted to come under the protection of the Tennessee Authorized Corporation Protection Act. The Authorized Corporation Protection Act is the vehicle through which the Business Combination Act and the Control Share Acquisition Act govern foreign corporations. The Authorized Corporation Protection Act provides that an "authorized corporation" can adopt a by-law or charter provision in which it elects to be subject to the operative provision of the Business Combination Act and the Control Share Acquisition Act. These statutes then become applicable "to the same extent as such provisions apply to a resident domestic corporation." Holly Farms' contacts with Tennessee make it an "authorized corporation" under the Authorized Corporation Protection Act. Holly Farms

---

1. Four Tennessee Acts relating to the regulation of tender offers were the subject of the district court order: 1) the Tennessee Investor Protection Act, §§ 48–35–101–113 (1988) which applies to tender offers directed at corporations that have substantial assets in Tennessee and are either incorporated in Tennessee or have their principle office in Tennessee and Investor Protection Act requires the offeror to file a registration statement containing information similar to that required to be disclosed by federal law; 2) the Tennessee Business Combination Act, Tenn.Code Ann. §§ 48–35–201–209 (1988) which prohibits a party owning ten percent or more of the stock of a resident domestic corporation from engaging in a business combination with that resident domestic corporation for five years, and then only if certain conditions are met; 3) the Tennessee Control Share Acquisi-

tion Act, Tenn.Code Ann. §§ 48–35–301–312 (1988) which prohibits the purchaser of certain percentages of shares of a covered Tennessee corporation from exercising the voting rights for those shares unless approval is obtained by a majority vote of the other shareholders; 4) the Tennessee Authorized Corporation Protection Act, Tenn.Code Ann. §§ 48–35–401–406 (1988) which permits a foreign corporation meeting certain requirements to elect to be subject to the provisions of the Business Combination Act and the Control Share Acquisition Act.

2. Both the Attorney General of the State of Tennessee and the Commissioner of the Tennessee Department of Commerce were parties to the litigation before the district court and before this court on expedited appeal.

also qualifies as a "offeree company" under the Investor Protection Act.

The granting or denial of a preliminary injunction is within the sound judicial discretion of the trial court. *Virginia Railway Co. v. System Federation, R.E.D.*, 300 U.S. 515, 551, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937). Therefore, the scope of review on appeal from the denial or granting of a preliminary injunction is limited to a determination of whether the district court abused its discretion. *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 564 (6th Cir., 1982). In determining on appeal whether the district court abused its discretion in granting or withholding preliminary injunctive relief, this circuit has set forth four standards which must be considered: 1) whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merit; 2) whether the plaintiffs have shown irreparable injury; 3) whether the issuance of a preliminary injunction would cause substantial harm to others; 4) whether the public interest would be served by issuing a preliminary injunction. *Id.* at 564; *Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, 260–62 (6th Cir.1977); *Adams v. Federal Express Corp.*, 547 F.2d 319, 322 (6th Cir.1976). Under such a detailed analysis, the district court did not abuse its discretion in this case.

Holly Farms fails under the first prong of the four-part test because it will not prevail on the merits. The district court is correct in its limited holding that the four Tennessee statutes at issue violate the Commerce Clause of the United States Constitution to the extent that they apply to Holly Farms, a target corporation organized under the laws of the State of Delaware, not Tennessee. Holly Farms argues that Tyson's tender offer contains several conditions and, therefore, the constitutional issue is not ripe until all of the other nonconstitutional issues have been resolved. As the district court correctly pointed out, courts routinely reach the merits of actions challenging less than all the impediments to the success of a tender offer. *See, e.g., Gelco Corp. v. Coniston Partners*, 652 F.Supp. 829, 837 (D.Minn.1986), *aff'd in part and vacated in part on other grounds*, 811 F.2d 414 (8th Cir.1987) (adjudicating poison pill and Minnesota takeover statute where offer subject to six conditions).

The Supreme Court in *Edgar v. MITE Corp.*, 457 U.S. 624, 640, 102 S.Ct. 2629, 2639, 2640, 73 L.Ed.2d 269 (1982) (plurality opinion) (citing *Shafer v. Farmers Grain Co.*, 268 U.S. 189, 199, 45 S.Ct. 481, 485, 69 L.Ed. 909 (1925)), stated that "the commerce clause permits ... only *incidental* regulation of interstate commerce by the States; direct regulation is prohibited." Tennessee's Authorized Corporation Protection Act *directly* regulates offers for out of state corporations doing business in Tennessee. It effectively insulates these foreign corporations from competition by directly regulating nationwide tender offers. Such direct regulation is prohibited. *See MITE*, 457 U.S. at 641–43, 102 S.Ct. at 2640–41 (Illinois statute regulating offers for domestic and foreign corporations is an impermissible direct restraint on interstate commerce); *CTS Corporation v. Dynamics Corp. of America*, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) (distinguishing *MITE* and stating that the burdens on interstate commerce created by the Indiana statute at issue were incidental regulation of interstate commerce because the Indiana statute regulated only Indiana corporations). *See also Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980) (the commerce clause prohibits a state from using its regulatory power to protect its own citizens from outside competition).

Even if we assume, as argued by Holly Farms, that the "direct regulation" test is a minority viewpoint in *MITE* and should not be applied as the current law, *see Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 845 n. 9 (1st Cir.1988), the four Tennessee statutes also impose a burden on interstate commerce excessive in relation to local interests served by the statute. *Pike v. Bruce Church Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Protecting shareholders of resident

corporations is a legitimate state interest. *CTS Corp.*, 107 S.Ct. at 1651. However, the Business Combination Act, the Control Shareholders Acquisition Act and the Authorized Corporation Protection Act protect incumbent management and not the shareholders. Under the Business Combination Act, an out-of-state offeror cannot consumate a merger or other combination with a domestic offeree or out-of-state offeree covered by the Authorized Corporation Protection Act for at least two years and possibly five absent approval of incumbent management. *See* Tenn.Code Ann. §§ 48–35–205–207(5) (1988). Under the Control Shareholders Acquisition Act, a purchaser wishing to acquire a control share in a domestic corporation or foreign corporation covered by the Authorized Corporation Protection Act must acquire ten percent of the outstanding shares before the purchaser can even determine whether it will be able to vote the control share. *See* Tenn.Code Ann. §§ 48–35–304–307 (1988).

The Investor Protection Act applies to offers for foreign corporations having "substantial assets" in Tennessee and that are either incorporated in or have their principal offices in Tennessee. Tenn.Code Ann. 48–35–102(7) (1988). Compared to the local benefits produced by the Investor Protection Act, the burden imposed upon interstate commerce is excessive. The Investor Protection Act makes no distinction between resident and non-resident shareholders of foreign corporations. Tennessee has an interest in protecting Tennessee shareholders only. *See CTS*, 107 S.Ct. at 1651 (a state "has no interest in protecting non-resident shareholders of non-resident corporations."). The Investor Protection Act imposes the same burdens as the statute struck down in *Martin–Marietta Corp. v. Bendix*, 690 F.2d at 558. In *Martin–Marietta*, this circuit found excessive "the burden imposed by Michigan in (a) requiring a prospective national tender offeror to file a registration statement with the State Department of Commerce and (b) the cost and time involved in litigation brought under the act to block or delay a tender offer...." *Id.* at 565–66.

As laudatory as it may be for the Tennessee Legislature to attempt to protect its local financial resources, in this case a nationally recognized, profitable, well managed corporation with an interest in the community where its operations are conducted, there is no greater national activity than the interstate financial markets of the United States. Under the Commerce Clause, one state simply cannot regulate the commercial activity of the citizens of the other forty-nine states. Under the express power of the Commerce Clause, Congress alone may correct any imbalance of power between business entities in the process of nationwide corporate takeovers. The control of takeovers of and foreign investments in broadly based national corporations of the United States is clearly a duty of Congress and not the individual states.

Tennessee's Authorized Corporation Protection Act creates a further risk of inconsistent regulation. *CTS Corp.*, 107 S.Ct. at 1649–51 (identifying as a fundamental principle of corporate law that "... This beneficial free market system depends at its core upon the fact that a corporation—except in the rarest situations—is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation...."). As the district court correctly pointed out "... the State of incorporation ... [is] the jurisdiction with regulatory authority over tender offers for the corporation it creates. This rule inhances predictibility to the extent shareholders expect their rights to be governed by the laws of the State of incorporation. But more importantly it is the only rule compatible with the constitutional prohibition against inconsistent regulation." Tennessee is only one of at least twenty states in which Holly Farms has significant contacts. Holly Farms is incorporated in the State of Delaware. As the district court stated, "to allow Tennessee to regulate Tysons' tender offer for Holly Farms stock is to guarantee inconsistent regulation." *See also TLX Acquisition Corp. v. Telex Corp.*, 679 F.Supp. 1022, 1030 (W.D.Okl.1987) ("It follows [from CTS] that when a state attempts to regu-

late voting rights in corporations other than those it has created, such corporations will be subject to the law of more than one state, which imposes an impermissible risk of inconsistent regulations by different states that may adversely effect interstate commerce.").

In sum, the four Tennessee statutes significantly deter nationwide tender offers for non-Tennessee corporations and impede the market for corporate control. These statutes function similarly to the statute at issue in *MITE* which the Supreme Court struck down stating that under that statute "shareholders are deprived of the opportunity to sell their shares at a premium. The allocation of economic resources to their highest valued use, a process which can improve efficiency and competition, is hindered. The incentive the tender offer provides incumbent management to perform well so that stock prices remain high is reduced." *MITE* 457 U.S. at 643, 102 S.Ct. at 2641. The district court was correct in holding that Tyson demonstrated a likelihood of success on the merits in that the application of the Tennessee statutes to its interstate tender offer imposed an impermissible burden on interstate commerce. *Martin–Marietta* 690 F.2d at 568.

Holly Farms fails under the second prong of the analysis because it has not demonstrated irreparable harm. Absent the preliminary injunction granted by the district court, Tyson stands to lose at least $3 million already paid to obtain financing commitments for its offer in addition to the opportunity to acquire Holly Farms. *See Martin Marietta Corp. v. Bendix Corp.*, 690 F.2d at 568 ("subjecting [tender offers] to an unconstitutional application of [state laws regulating tender offers] amounts to irreparable injury.").

With regard to the third prong of the test, Holly Farms has suffered no injury as a result of the preliminary injunction. Holly Farms has no right to the unconstitutional application of state laws. *Martin Marietta v. Bendix Corp.*, 690 F.2d at 568.

Finally, under the fourth prong of the test, it is not in the public interest to perpetuate the unconstitutional application of

a statute. *See Martin Marietta v. Bendix Corp.*, 690 F.2d at 568 ("A market approach in the area of tender offers was adopted by Congress due its recognition that tender offers often benefit an investor and that a statute preventing tender offers could harm, rather than protect, investors.")

We find no abuse of discretion and affirm the district court.