**Mike DEVEREAUX, dba NOSI Construction, et al., Plaintiffs,**

v.

**AMATEUR SOFTBALL ASSOCIATION OF AMERICA, et al., Defendants.**

**No. C–2–90–652.**

United States District Court, S.D. Ohio, E.D.

June 20, 1991.

Anthony O. Mancuso, Columbus, Ohio, for plaintiffs.

David W. Alexander, Gregory S. Lashutka, Squire Sanders & Dempsey, Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, Judge.

This matter is before the Court pursuant to the Substitute Motion of Defendants Amateur Softball Association ("ASA"), et al., for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure. By way of background, the instant case was filed in the Franklin County Court of Common Pleas on August 28, 1990. The Complaint and Action For Declaratory Judgment was coupled with a motion for a temporary restraining order.

The plaintiffs consist of Mike Devereaux, dba NOSI Construction and Doug Ison, also dba NOSI Construction, who are general partners and officers of the contracting business. This contracting business sponsors a softball team known as NOSI Construction Softball Team, also a plaintiff in the instant action. The remaining plaintiffs are softball players for the NOSI Construction team, to-wit: Tim Linson, Kelly Ratcliff, Joe Foley, Gary Perkins, and Gary Morris. The plaintiffs allege that through acts of fraud, failure to abide by the 1990 Official Guide and Rule Book of the ASA ("Rule Book"), selective and prejudicial enforcement of the Rule Book, and failure to afford the players due process the plaintiff softball players suffered irreparable harm, loss of money, and incurred expenses. The plaintiffs further requested that the Court declare that the plaintiffs were not properly afforded the remedies available to them under the Rule Book, declare certain sections of the Rule Book to be violative of the Equal Protection Clause, declare that there has been a denial of substantive and procedural due process, and further, to declare the plaintiff softball players eligible for the 1990 Men's Major Slow Pitch National Championship.

On August 29, 1990, the defendants removed the action to this Court under the original jurisdiction provided for in 28 U.S.C. § 1331, 28 U.S.C. § 1441(b), and in the alternative 28 U.S.C. § 1441(a). Upon motion and pursuant to S.D.Ohio R. 3.7.1, an informal temporary restraining order conference was held in the chambers of the Court, on August 30, 1990. Unable to resolve the matter, a formal hearing was held on the record in the courtroom later that same day.

In the formal hearing, each side was permitted to orally argue their respective position. After due consideration, the Court found that the plaintiffs had failed to exhaust their administrative remedies as provided for in the Amateur Sports Act of 1978, 36 U.S.C. §§ 371 *et seq.* Based upon the plaintiffs' failure to exhaust their administrative remedies the Court denied the plaintiffs' motion for a temporary restraining order.

Shortly after the hearing the defendants filed an Answer to the Complaint, coupled with a Counterclaim. In the First Counterclaim the defendants allege that the plaintiffs had failed to exhaust the administrative and arbitration procedures of review provided under the Amateur Sports Act of 1978, which they stated is a statutorily

imposed jurisdictional prerequisite preempting judicial review by this Court. As such, the defendants sought and continue to seek further necessary and proper relief based on a declaratory judgment or decree pursuant to 28 U.S.C. § 2202.[1] The purpose of the Counterclaim would appear to be an attempt to avoid multiplicity of suits and to obtain a remedy through early adjudication without having to wait for an adversary to bring similar suit. To put it another way, the Defendants wish to obtain an order from this Court for use in future similar proceedings which challenge the authority and procedures of the ASA and the Rule Book.

The defendants, in their Second Counterclaim, request that the Court declare as follows:

> By virtue of passing the Amateur Sports Act of 1978 and, *inter alia*, and the eligibility dispute resolution mechanism contained therein, Congress has adopted a comprehensive scheme which preempts the ability of the state courts to hear and determine claims as to eligibility to participate in amateur softball competition organized, conducted or authorized by ASA as a National Governing Body.

Shortly thereafter, the Court was advised that counsel for the plaintiffs wished to withdraw as attorney of record based upon the clients' lack of cooperation and failure to meet their financial obligations to the attorney. On December 27, 1990, the Court permitted Attorney Mancuso to withdraw as counsel of record. Prior to his withdrawal, Attorney Anthony Mancuso advised the Court that the purpose of the suit was simply to attempt to permit the softball players to play in the Men's Major Slow Pitch National Championship for 1990, which was to begin on August 31, 1990, and continue through to September 3, 1990. When the Court found that the softball players must first exhaust their administrative remedies the practical effect was to permit the ASA to continue their ban of the plaintiff softball players from participating in the championship games over the forthcoming weekend. Therefore, the plaintiffs essentially dismissed their case once the Court rendered its opinion on the temporary restraining order.

A preliminary pretrial hearing was held on January 30, 1991, wherein the defendants were represented however, only Plaintiffs Devereaux and Ison appeared. At the conference, the plaintiffs advised Magistrate Judge Norah McCann King that they did not intend to retain counsel to continue to prosecute their case nor defend the counterclaims.

On March 19, 1991, the defendants filed a motion for summary judgment. However, on April 22, 1991, the defendants moved the Court for leave to file a substitute motion for summary judgment. In an Order dated April 29, 1991, Magistrate Judge King granted the defendants' request, and on the same date the substituting motion was filed. It is that motion which is currently before this Court.

### FACTS

This action emanates from a derivative of "America's favorite pastime", namely, Softball. The plaintiffs are made up of five "major" slow pitch softball players, a team sponsor, and two officers of the team sponsor. The defendants, on the other hand, consist of the ASA and several of their administrative personnel, specifically, Don E. Porter, Executive Director of the ASA; Claud E. Davenport, Jr., ASA Commissioner for the State of Kansas; Howard Honnaker, ASA Commissioner for the State of Ohio; William W. Kearney, ASA Commissioner for the City of Columbus, Ohio: and Jack Mattimore, Director of the 1990 ASA Men's Major Slow Pitch Softball Championship.

Although softball is often thought of as the neighborhood picnic version of major league baseball, or "hardball", recently the sport has gained enormous support, interest and growth. With such growth comes

---

1. The party later states in their motion for summary judgment that their request for declaratory relief is pursuant to 28 U.S.C. § 2201.

the potential for widespread recognition for those players and teams who excel, and in turn, there likewise exists the potential for financial rewards.[2] With the changes came the need to govern amateur softball in an attempt to maintain the spirit of amateur sports.

Since 1933 the ASA has developed and promoted softball on an organized basis. Currently there are thousands of teams, umpires and administrators affiliated with the ASA. More than 2,000,000 men, women and children participate in ASA softball each year, and the trends reflect that the numbers will continue to grow.[3]

In accordance with the Amateur Sports Act of 1978, 36 U.S.C. § 391, the ASA has been selected as the "National Governing Body" for softball in the United States. As such, the ASA has broad authority to govern the sport. As noted by the defendants, one of the powers placed upon the ASA is as follows:

> (5) conduct amateur athletic competition, including national championships ... and establish procedures for the determination of eligibility standards for participation in such competitions....

The instant controversy extends from the rules which govern the eligibility of softball players.

It is uncontested that in order to be eligible to participate in international, national, state or local amateur softball competition organized by the ASA, the player must observe and abide by the eligibility standards adopted by the ASA. One of the rules adopted by the ASA is Rule 2.01, which provides in pertinent part as follows:

> a. A player that plays major classes outside of their residency or employment state or metro association must file a written affidavit with the national office on or before June 1st of the current year indicating in which state or metro association they wish to play. After having played major classes outside of their state or metro association, whether an affidavit is filed or not, he/she may not play in any other state or metro association during the calendar year.

> \*  \*  \*  \*  \*  \*

> c. A player may participate as a regular rostered player on only one (1) team within a division in championship play during a season.

The defendants state that the purpose of the rule is to prevent the mid-season switching of players from one roster to another. This, they state, would create chaos because sponsors would continually bid and trade players throughout the course of a season. Such bidding and trading, it has been determined, would be contrary to the spirit of amateur sports. Therefore, a player must essentially declare the team he or she intends to play on for the duration of the season. The player is then permitted to change teams at the end of a calendar year.

In this case, it is uncontested that Plaintiffs Linson, Ratcliff, Foley, Perkins, and Morris are individual softball players that declared and filed affidavits with the ASA national office electing to play in the State of Kansas for the calendar year of 1990.[4]

---

**2.** This is best exemplified by reviewing Plaintiff's Exhibit 11, a copy of Steele's Sports Company's Volume 1, No. 10 issue of "Softball USA" newspaper. The newspaper is published twice a month during the softball season and once a month during the off season. It is published by the Steele Sports Company, a sponsor of the Steele's Silver Bullets softball team of Grafton, Ohio. The issue provides numerous statistics of hundreds of softball players nationwide, various articles of past and upcoming nationwide tournaments, the national rankings of various teams and several advertisements for everything from the "Steele's beryllium bauxite treated Pro Star 91 Series Grip of Steele softball bat" to the "Steele's Skyhawk Official Softball".

**3.** See Defendant's Pre–Hearing Memorandum of Points and Authorities in Opposition to Motion for Temporary Restraining Order, at pp. 4–5.

**4.** Three of the five affidavits are made part of the file as Plaintiff's Exhibits 3–1, 3–2, and 3–3, and are entitled "Transfer of Residency". The affidavits provide in relevant part and as an example as follows: "I, [*Tim Linson*], hereby affirm that I plan to play softball for a team in [*Kansas*], which is in a state/metro association area other than where I am a legal resident. I understand that I am restricted to this state/metro association area for the entire year." (emphasis reflects handwriting). The affidavit is then signed by the player and must

Specifically, the players were to play for the Coors/Atkins Softball Team. It is further uncontested that for purposes of the 1990 Men's Major Slow Pitch National Championship, the plaintiff players were informed that they would not be permitted to compete with any team other than the Coors/Atkins Softball Team. The players, however, wished to play for the Plaintiff NOSI Construction Softball Team, a team based out of Columbus, Ohio. The managers of the Coors/Atkins team filed a complaint concerning the players known desire to play for another team. Defendant Commissioner Claud Davenport, on June 25, 1990, by certified mail, notified each of the players that a hearing was to be held.[5] Subsequent to the hearing the players were informed that they would be prohibited from playing for the NOSI Construction Softball Team. On July 27, 1990, Defendant Executive Director Porter upheld the decision of Commissioner Davenport.

Based upon the rulings of the Commissioner of the State of Kansas and the Executive Director of the ASA, prohibiting the players to compete on the NOSI Construction team, the plaintiffs file the instant action requesting that the Court temporarily restrain the ASA from holding the tournament or from preventing their participation with the team of their choice. As previously stated, the Court denied the plaintiffs' request for a temporary restraining order.

It is the Court's assumption that pursuant to the refusal to issue the order, the tournament was held and the plaintiff softball players were precluded from competing on behalf of the NOSI Construction Softball Team. The Court will not turn its attention to the defendant's motion for summary judgment.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943)). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

Such an inquiry necessarily implicates the evidentiary standard of proof that

be approved by the State or Metro Commissioner for the state or metro association the player intends to play in. In this case, the approval of Defendant Claud Davenport was required.

**5.** One player refused to sign for the notification of the hearing while most of the players' wives signed for the remaining notifications sent to the players' residences. Two dates for the hearing were proposed, June 30th, 1990, and July 7th, 1990. On June 28th, 1990, Davenport received a telephone call from an attorney representing Plaintiffs Foley, Ratcliff and Linson (It is unknown by the Court whether the attorney was in fact Attorney Mancuso). After discussing alternative available dates, times and places, the parties were unable to reach an agreement, therefore, Davenport set the hearing for June 30th, 1990, at 1115 S.W. Wanamaker, Topeka, Kansas. No player nor representatives appeared.

On July 11, 1990, Davenport informed the players that each of them was ineligible to play for the NOSI Construction in the ASA National Championship.

would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *citing, Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553, (quoting Fed.R.Civ.P. 1); *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512.

Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## ANALYSIS

It is well established that where administrative remedies are provided by federal law, a litigant must first exhaust those remedies before the dispute may be properly brought before the federal courts. *See, e.g., Reynolds v. The Athletic Congress of the U.S.A., Inc., et al.,* C2–91–003 (S.D. of Ohio, March 19, 1991) (Opinion and Order, at p. 5) (Kinneary, J.). It is further settled that where a statute provides for binding arbitration, a litigant must first seek redress through the arbitration procedure before approaching the federal courts. *See, e.g., Nehemiah v. The Athletic Congress of the U.S.A., Inc.,* CIB action 83–97, pp. 15–25 (D.Md., January 13, 1983) (Comments from the Bench are attached to Defendant's Pre–Hearing Memorandum In Opposition to Motion For Temporary Restraining Order as Exhibit B); *Gault v. Int'l Olympic Comm.,* No. 84–2353 (C.D.Cal., April 17, 1984) (Opinion attached to Defendant's Pre–Hearing Memorandum as Exhibit A).

As previously stated, Congress enacted the Amateur Sports Act to govern amateur athletics in the United States. Under the Act, ASA was recognized as the exclusive governing body for amateur softball. As the governing body, the ASA has set forth a series of hearing procedures to address conflicts concerning player eligibility.[6]

---

6. Under Article 4, entitled "Disqualification", Rule 4.03—Disqualification Procedures, of the 1990 Official ASA Guide & Playing Rules, provides as follows:

**4.03– DISQUALIFICATION PROCEDURES.**

(a) **Hearing.** Prior to disqualification, a team or team member must be given an opportunity for a hearing by the commissioner in whose jurisdiction the violation took place. The commissioner may appoint a deputy or district commissioner, an officer or an official of the state or metro association, or any other disinterested party to conduct the hearing in his place.

(b) **Notification.** The team or team member must be notified in writing of the time, place and date of the hearing. A team or team member is entitled to an alternate date if for a good cause the original is not acceptable. Should the accused player fail to attend the hearing, the person conducting the hearing may proceed and take the evidence of those in attendance.

(c) **Ruling.** After hearing the evidence the person presiding at the hearing shall render a written decision within fourteen (14) days. If a decision is not rendered within fourteen (14) days, a written appeal may be made to the Executive Director or designate, whose decision shall be final.

(d) **Right of Appeal.** Following the decision of the state or metro association commissioner, the player or the person or persons

Similarly, the Amateur Sports Act of 1978, expressly empowers the Olympic Committee to hear complaints by athletes that the national governing body[7], in this instance the ASA, has failed to perform its duties under The Act by failing to take appropriate action when the athlete's complaint is justified. 36 U.S.C. §§ 374(8), 375(a)(5), 382b [8], 391(b)(3) [9] and 395(a).

In section 395(a)(1), Congress created the right of the party allegedly aggrieved by a decision of the national governing body to appeal to the "Corporation" [10]. The code section provides in relevant part as follows:

[a]ny amateur sports organization or person which belongs to or is eligible to belong to a national governing body may seek to compel such national governing body to comply with the requirements of sections 391(b) and 392 of this title by filing a written complaint with the Corporation. Such organization or person may take such action only after having exhausted all available remedies within such national governing body for correcting deficiencies, unless it can be shown by clear and convincing evidence that those remedies would have resulted in unnecessary delay. The Corporation shall establish procedures for the filing and disposition of complaints received under this subsection.

Therefore, a right of appeal exists from an adverse determination of the ASA. Furthermore, had the softball players likewise received an inauspicious decision from the United States Olympic Committee, 36 U.S.C. § 395(c)(1) provides that "[t]he right to review by any party aggrieved by a determination of the Corporation under the requirements of this section or section 391(c) of this title shall be to any regional office of the American Arbitration Association."

The Statutes set forth above clearly provide the plaintiffs with a series of administrative procedures that could bring about a remedy. As previously stated, a litigant must first exhaust those remedies before his dispute can be heard in this Court. Furthermore, the statutes provide for arbitration on potentially two separate occasions, first, if required by the United States Olympic Committee, and second, as a right of appeal from an adverse ruling by the United States Olympic Committee. The plaintiffs failed to avail themselves of any of the numerous dispute resolution mechanisms specifically put in place to address just the type of controversy that presently confronts this Court.

The Court hereby finds that the plaintiffs' failure to exhaust the administrative remedies provided for under the Amateur Sports Act of 1978, the arbitration procedures provided for under the Act, and the administrative remedies set forth in the official rules of the ASA, creates a situation whereby the Court's involvement is premature.

It should further be noted that the original Motion for Summary Judgment and the

---

claiming the player is not eligible may appeal in writing within fourteen (14) days to the Executive Director or designate, whose decision shall be final. The Executive Director must render a decision on any appeal within fourteen (14) days.

**7.** Pursuant to 36 U.S.C. § 373(6), a "national governing body" means an amateur sports organization which is recognized by the United States Olympic Committee in accordance with 36 U.S.C. § 391.

**8.** § 382b is entitled "Resolution of disputes" and sets forth the requirement that the ASA "[i]n its constitution and bylaws ... shall establish and maintain provisions for the swift and equitable resolution of disputes involving any of its members and relating to the opportunity of an amateur athlete, coach, trainer, manager, adminis-

trator, or official to participate in the Olympic Games, the Pan–American Games, world championship competition, or other such protected competition as defined in such constitution and bylaws."

**9.** In order to be recognized as a "national governing body", the ASA must agree, as provided under § 391(b)(3), to submit "... to binding arbitration conducted in accordance with the commercial rules of the American Arbitration Association in any controversy involving ... the opportunity of any amateur athlete ... to participate in amateur athletic competition, as provided for in the Corporation's constitution and bylaws."

**10.** The "Corporation" is defined at 36 U.S.C. § 373(4) as the "United States Olympic Committee".

Substitute Motion for Summary Judgment were filed by Defendant ASA, however, the plaintiffs have failed to file a response and have informed the Court that they do not intend to defend against the instant motions. Local Rule 4.0.2 of the United States District Court, Southern District of Ohio, provides that "[f]ailure to file a memorandum contra may be cause for the Court to grant the motion as filed." The plaintiffs' failure to file a memorandum contra and failure to set forth any evidence in support of the claims contained in the Complaint, provide this Court with ample additional reason to find that summary judgment is appropriate at this time.

Therefore, based upon the plaintiff's failure to exhaust the administrative remedies, failure to file a memorandum contra, and failure to state a claim upon which relief can be granted, the Defendant's Substitute Motion For Summary Judgment is hereby GRANTED.

IT IS SO ORDERED.