**Eric Randolph BARNES, Plaintiff**

v.

**INTERNATIONAL AMATEUR ATHLETIC FEDERATION, the Athletics Congress of the United States of America, and West Virginia Association/TAC, Defendants.**

**Civ. A. No. 2:92–0603.**

United States District Court,
S.D. West Virginia,
at Charleston.

Sept. 30, 1993.

Anne E. Shaffer and J. Timothy DiPiero, DiTrapano & Jackson, Charleston, WV, for plaintiff.

James E. Coleman, Jr., Durham, NC, for defendants.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the motion of the defendant, the International

Amateur Athletic Federation, to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, and on the joint motion of the defendants, The Athletics Congress of the United States of America, and the West Virginia Association of the Athletics Congress, to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. *Procedural History*

Plaintiff, Eric Randolph Barnes, the world record holder in the shot put, originally filed this action in the Circuit Court of Kanawha County, West Virginia, on June 22, 1992, seeking declaratory and injunctive relief, as well as monetary damages, against the International Amateur Athletic Federation (hereinafter, the "IAAF"), The Athletics Congress of the United States of America (hereinafter, "TAC"), and the West Virginia Association of the Athletics Congress (hereinafter, "WVA/TAC"), relating to his two-year suspension from athletic competition for allegedly testing positive, on August 7, 1990, for methyltestosterone, a prohibited substance. Through his verified complaint in state court, Barnes sought, *inter alia,* the issuance of injunctive relief to prohibit his exclusion from the United States Olympic trials that were to be held in New Orleans, Louisiana, on June 26 and June 27, 1992.

Following an *ex parte* hearing held on June 22, 1992, the Circuit Court of Kanawha County ordered that the defendants be "temporarily, preliminarily and permanently enjoined ... from impeding or otherwise interfering with Plaintiff's participation in all international and national amateur track and field events, including, but not limited to the 1992 United States Olympic Trials and the 1992 International Olympic Games." The circuit court further enjoined the defendants and any persons acting in concert with them from declaring the plaintiff ineligible to participate in the 1992 United States Olympic Games on the basis of failure to successfully compete in a qualifying meet, and from further threatening to suspend or contaminate any athlete who competes with the plaintiff.

Following the issuance of the *ex parte* injunction, TAC filed a petition for removal of the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446, and an emergency motion to dissolve the injunction issued by the Circuit Court of Kanawha County. Plaintiff, in turn, filed a motion to remand on the basis that WVA/TAC destroyed diversity. By order entered June 25, 1992, this court denied plaintiff's motion to remand, concluding "that there is both no real intention on the part of the plaintiff to obtain a joint judgment against WVA/TAC, and no colorable ground for so claiming." Mem. Order of June 25, 1992, at 8. By that order, the court granted TAC's motion to dissolve the temporary restraining order entered by the Circuit Court of Kanawha County on the basis that the plaintiff had failed to exhaust his administrative remedies as required under the Amateur Sports Act (hereinafter, the "Act"), 36 U.S.C. § 371, *et seq.,* thereby rendering the court without subject matter jurisdiction over that aspect of the complaint relating to injunctive relief. *Id.* at 16.

Plaintiff alleges seven additional claims in his verified complaint for injunctive relief. In count I, he alleges a denial of contractual due process on the part of the IAAF and TAC for acting in an allegedly arbitrary and capricious manner in their application of IAAF regulations and review procedures concerning drug testing. In count II, it is alleged that the defendants have breached their contracts with him by failing to provide him with fair and equitable procedures for resolving disputes between himself and the IAAF and TAC concerning drug testing procedures, and for failing to follow their own guidelines. In count III, plaintiff seeks a declaration that the decisions of the IAAF and TAC regarding his ineligibility to compete be declared void. Count IV is a claim for libel and slander against the IAAF and TAC for publishing to the news media that he used an anabolic steroid, allegedly in disregard of contractual obligations owed to the plaintiff. In count V, plaintiff alleges a claim against the IAAF and TAC for intentional interference with existing and prospective business relationships. Count VI is a negligence claim against all of the defendants for breaching an unidentified duty of care. In

**1540**

count VII, plaintiff seeks punitive damages from the IAAF and TAC.

## II. *IAAF's Motion to Dismiss*

The IAAF contends that it should be dismissed from this action inasmuch as the court does not have personal jurisdiction over it. First, it contends that service of process was insufficient upon it, and second, that as an unincorporated association, it lacks the capacity to be sued under West Virginia law. The court will first turn to the insufficiency of process argument.

The IAAF argues that as an unincorporated association,[1] personal service of process upon Mr. Ollan Cassell, its vice-president, in a New Orleans hotel, was insufficient to obtain personal jurisdiction upon it under any law in West Virginia. The IAAF further argues that while the plaintiff alleges that the IAAF was properly served under Rule 4(d)(8) of the West Virginia Rules of Civil Procedure,[2] that rule only provides for personal service "[u]pon a foreign corporation, including a business trust, which has not qualified to do business in the State." W.Va. R.Civ.P. 4(d)(8). The IAAF is correct on this point and plaintiff does not further contest IAAF's position that nothing in Rule 4(d)(8) authorizes service of any type upon an unincorporated association.

The IAAF argues as well that it was not properly served under West Virginia's long-arm statute, which expressly excludes "voluntary unincorporated associations" from the category of non-residents who are subject to long-arm jurisdiction. *See* W.Va.Code § 56–3–33(e)(2) (1993 Supp.). The plaintiff acknowledges the exclusion of nonresident unincorporated associations from the reach of the long-arm statute but contends that fact is irrelevant where there is an alternative basis for serving the IAAF. Plt.'s Mem. in Opp'n to IAAF's Mot. to Dismiss at 24–25. Plaintiff now asserts that the IAAF was properly served under Rule 4(d)(9) of the West Virginia Rules of Civil Procedure, which specifically provides for personal service upon unin-

corporated associations. Rule 4(d)(9) provides, in relevant part:

> (d) *Process; personal or substituted service.*—Personal or substituted service of process shall be made by delivering or mailing *within the State* a copy of the summons and of the complaint together, in the manner prescribed in this subdivision.... Personal or substituted service shall be made in the following manner:
>
>     ....
>
> (9) Unincorporated Associations.—Upon an unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to any officer,....

W.Va.R.Civ.P. 4(d)(9) (emphasis added).

Although Rule 4(d)(9) provides for personal service upon an unincorporated association, it is limited to those instances where service is made "within the State." This limitation is evident from the introductory language in Rule 4(d). The plaintiff ignores that language and focuses only on the language in subsection (9). Subsection (9) must be read *in pari materia* with the introductory portion of Rule 4(d) and relevant case law. The qualifying language, "within the State," in Rule 4(d) makes it clear that a court will only obtain personal jurisdiction over a party, including an unincorporated association, when personal or substituted service is made upon the party within the State. *Central Operating Co. v. Utility Workers of America,* 491 F.2d 245, 251 (4th Cir.1974). Mr. Cassell was personally served with a copy of the summons and complaint in New Orleans, Louisiana. Thus, the requirements of Rule 4(d)(9) were not met.

■ Rule 4(f) specifically addresses the effects of personal service made upon a nonresident defendant outside the state:

> (f) *Personal service outside State.*—Personal service of a copy of the summons and of the complaint may be made outside of this State on any defendant. If any such defendant be then a resident of this State ... such service shall have the same effect

---

1. There is no disagreement as to the IAAF being an unincorporated association.

2. *See* Plt.'s Mem. in Supp. of Mot. for Entry of Def. Against Dfts. IAAF and WVA/TAC at 2 and Ex. B attached to the motion.

as personal service within this State and within the county of the defendant's residence; *otherwise, such service · shall have the same effect as constructive service.* W.Va.R.Civ.P. 4(f) (emphasis added). The type of service of process made upon the IAAF is governed by Rule 4(f), not Rule 4(d)(9) as alleged by the plaintiff. Thus, plaintiff did not perfect personal service of process upon, nor did this court obtain personal jurisdiction over, the IAAF, a nonresident unincorporated association, merely by the plaintiff personally serving the IAAF's vice-president, Mr. Cassell, outside the state. *Central Operating Co.,* 491 F.2d at 251; *Fabian v. Kennedy,* 333 F.Supp. 1001, 1005 (N.D.W.Va.1971) ("Personal service of process on a non-resident of West Virginia outside the state has the same effect, and no other, as an order of publication"); *Teachout v. Larry Sherman's Bakery, Inc.,* 158 W.Va. 1020, 216 S.E.2d 889, 891 (1975) (recognizing well-established rule that service of process outside state on nonresident defendant does not confer personal jurisdiction over the defendant).

Inasmuch as plaintiff has failed to identify any West Virginia law under which personal service of process upon Mr. Cassell gives the court personal jurisdiction over the IAAF, the court must grant the IAAF's motion to dismiss for insufficiency of service of process. The constructive service of process made upon the IAAF is insufficient to confer personal jurisdiction over this defendant. Having determined that dismissal of the IAAF is required on this basis, it is unnecessary to address IAAF's other grounds for dismissal.

### III. *TAC and WVA/TAC's Joint Motion to Dismiss*

TAC and WVA/TAC contend that the complaint is insufficient on its face as to WVA/TAC in light of this court's earlier finding that the plaintiff was not a member of WVA/TAC during any of the years relevant to this dispute. *See* Mem. Order of June 25, 1992, at 7–8. In denying the plaintiff's motion to remand, this court also concluded "that there is both no real intention on the part of the plaintiff to obtain a joint judgment against WVA/TAC, and no colorable ground for so claiming." *Id.* at 8. Accordingly, the com-plaint will be dismissed with prejudice as to WVA/TAC, leaving TAC as the sole remaining defendant to be considered.

TAC contends that the complaint should be dismissed for two reasons, namely, that the plaintiff has failed to exhaust his administrative remedies, thereby rendering this court without subject matter jurisdiction, and that he has failed to state a claim upon which relief can be granted on any of the seven counts listed in his complaint.

TAC contends that all of plaintiff's claims are an attempt to cloud the real issue, namely, plaintiff's ineligibility to compete in amateur sporting events from June 7, 1990 through August 7, 1992, by reason of a doping violation. TAC further contends that this issue has no place in federal courts in light of the reach of the Amateur Sports Act, which allegedly gives exclusive jurisdiction over questions of an amateur athlete's eligibility to compete to the United States Olympic Committee (hereinafter, the "USOC"), and its constituent National Governing Bodies (hereinafter, "NGBs"), such as TAC. *See Behagen v. Amateur Basketball Ass'n. of U.S.,* 884 F.2d 524, 529 (10th Cir.1989) ("The Act ... makes clear that Congress intended an NGB to exercise monolithic control over its particular amateur sport, including coordinating with the appropriate international sports federation and controlling amateur eligibility for Americans that participate in that sport"), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990):

TAC contends that, with the exception of the end of plaintiff's two-year ineligibility status, nothing has changed in this controversy subsequent to this court's ruling that the plaintiff had failed to exhaust his available administrative remedies, the effect of which was that the court was without subject matter jurisdiction as to plaintiff's claim for injunctive relief. It is further alleged that the court is without subject matter jurisdiction over all of plaintiff's claims inasmuch as the Act, the USOC Constitution and TAC By–Laws provide an elaborate administrative scheme for prompt resolution of disputes between athletes and their NGBs, including binding arbitration.

Contrary to his counsel's statements at the hearing of June 24, 1992, that he had not exhausted his administrative remedies prior to instituting this action, *see* Mem. Order of June 25, 1992, at 12–13, plaintiff now insists that he had exhausted the administrative remedies made available by TAC and was not required to pursue arbitration in order to exhaust. His two-year period of ineligibility having expired, he contends there is nothing for an arbitration panel to decide because such a panel can only determine disputes involving an athlete's participation in athletic events. Finally, plaintiff contends that even if other administrative remedies were available to him, he was not required to exhaust them where Congress, under the Act, has allegedly not mandated exhaustion as to eligibility disputes; where the administrative remedy could not provide him with adequate relief as to all of his claims; where TAC has shown bias or has predetermined the issue of his eligibility; and where exhaustion would have caused him undue prejudice in a subsequent court action.

### IV. *Analysis*

Despite plaintiff's present assertions to the contrary, he has failed to exhaust his available administrative remedies. The plaintiff pursued his administrative remedies only to the point that he had received an unfavorable decision by the TAC Doping Appeals Board in April, 1991. Still being aggrieved by TAC's determination relative to his eligibility status, the plaintiff nonetheless abandoned his right to pursue the other avenue of administrative relief available to him—namely, invocation of the dispute resolution mechanism afforded by Article IX of the USOC Constitution, which expressly includes the right of the amateur athlete to submit his claim to the American Arbitration Association for binding arbitration.[3]

Although plaintiff failed to exhaust his administrative remedies, he suggests that he was justified in doing so and is entitled to pursue his claims in court based upon the decision of the United States Supreme Court in *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992), where the Court held that a federal prisoner was not required to exhaust administrative remedies before initiating a *Bivens* action[4] solely for money damages. Before concluding there that the plaintiff was not required to exhaust his administrative remedies, the Court explained the proper exhaustion inquiry that a federal court should conduct.

■ At the outset, the court stressed that congressional intent is critical to any exhaustion inquiry. *McCarthy*, 503 U.S. at ——, 112 S.Ct. at 1086. "Where Congress specifically mandates, exhaustion is required.... But where Congress has not clearly required exhaustion, sound judicial discretion governs." *Id.* (citations omitted). Even where a court exercises its discretion, however, "appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme." *Id.* (citation omitted). Thus, every exhaustion inquiry begins with a look at congressional intent and the relevant statutory scheme.

■ The Court went on to explain that in determining whether exhaustion is required, federal courts must balance the institutional interests favoring exhaustion—protecting administrative agency authority and promoting judicial efficiency—with "the interest of the individual in retaining prompt access to a federal judicial forum." *Id.* at ——, 112 S.Ct. at 1087. Administrative remedies need not be exhausted "if the litigant's interests in immediate judicial review outweigh the government's interests" that exhaustion is designed to further. *Id.* (citation omitted).

The Court then outlined three broad areas where it has traditionally recognized that the interests of the individual overcome the requirement of administrative exhaustion.

---

**3.** Under the provisions of Article IX, plaintiff had six months from April 22, 1991, the date of the decision of TAC's Doping Appeals Board, within which to request binding arbitration on the unfavorable decision.

**4.** *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

First, exhaustion is not required where resort to the administrative remedy may occasion undue prejudice to pursuit of a future court action. *Id.* This is likely to occur, the court observed, where the timetable for administrative action is indefinite or where immediate judicial consideration of a claim is necessary to avoid irreparable harm. *Id.* Second, an administrative remedy may be inadequate if the agency lacks the power to grant effective relief or the challenge is to the adequacy of the agency procedure itself. *Id.* at ——, 112 S.Ct. at 1088. Third, exhaustion may be inadequate if the administrative body is shown to be biased or has otherwise predetermined the issue. *Id.*

■ With these general principles in mind, the court looks first at congressional intent. In 1978, Congress amended the Amateur Sports Act to regulate amateur athletics in the United States. Under the Act, Congress vested the USOC with the authority to coordinate and regulate amateur athletics and amateur sports organizations. Congress intended the USOC to "exercise *exclusive jurisdiction,* either directly or through its constituent members or committees, over *all matters* pertaining to the participation of the United States" in international athletic competition. 36 U.S.C. § 374(3) (emphasis added). Through the provisions of the Act, Congress intended "to correct the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States." H.R.Rep. No. 1627, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S.C.C.A.N. 7478, 7482.

To further the statutory mandates of the Act, the USOC is empowered to recognize various NGBs for particular types of athletic competition. 36 U.S.C. § 375(a)(4). Each NGB is expressly granted the exclusive right to make determinations regarding the eligibility of an athlete for competition. *Id.* at § 393(5), (7). One court has observed that the scheme established in the Act demonstrates that Congress intended an NGB "to exercise monolithic control over its particular

amateur sport." *Behagen,* 884 F.2d at 529. TAC is the NGB for amateur track and field competition in the United States.

Under the Act, the USOC is required to ·establish procedures for the "swift resolution of conflicts and disputes involving amateur athletes, national governing bodies, and amateur sports organizations," and to "protect the opportunity of any amateur athlete ... to participate in amateur athletic competition." 36 U.S.C. § 374(8). The Act further specifies that:

> In its constitution and bylaws, the Corporation shall establish and maintain provisions for the swift and equitable resolution of disputes involving any of its members and relating to the opportunity of an amateur athlete, ... to participate in the Olympic Games, the Pan–American Games, world championship competition, or other such protected competition as defined in such constitution and bylaws.

36 U.S.C. § 382b. It is thus seen that the original dispute at issue here, at least insofar as that dispute pertained to the plaintiff's eligibility to participate in the 1992 Olympic Games, was expressly subject to resolution in accordance with the mandates of § 382b of the Act.

The USOC has, pursuant to the statutory directives of the Act, established procedures by which disputes are to be resolved regarding an athlete's participation in international athletic competition. In Article IX of the USOC Constitution pertaining to the right of amateur athletes to compete in international athletic competition, the USOC must first attempt to resolve the dispute and, if unable to do so to the athlete's satisfaction, the athlete has the right to submit the matter to the American Arbitration Association for resolution. *See* Article IX, USOC Constitution. TAC, as a national governing body, has agreed that controversies over an amateur athlete's participation in international competition may be submitted to arbitration in Article 21 of its bylaws.[5]

---

5. Article 21 provides in pertinent part that:
  Any amateur athlete who alleges that he or she has been denied ... a right established in paragraph A of this Article shall immediately

inform the Executive Director, who shall cause an investigation to be made and steps taken to settle the controversy without delay. If the Executive Director is unable to settle such con-

TAC has also promulgated regulations which provide athletes with a comprehensive dispute resolution mechanism as is required of it by the Act. 36 U.S.C. § 391(b)(11); *see, e.g.,* TAC Regulations 9, 10, and 12. The regulations specify in detail how TAC proceedings to review positive drug results shall be conducted. In those cases in which an athlete requests a hearing, TAC convenes a three-person panel to consider the athlete's challenge to the positive drug test. *See* TAC Regulation 10(D)(3)(d). If the athlete is not satisfied with the decision of the panel, he may then appeal the adverse ruling to the Doping Appeals Board. *Id.* at 10(D)(12). The decision of the Appeals Board is the final decision of TAC. The athlete may then, consistent with the provisions of TAC's own bylaws and the USOC Constitution, seek arbitration of the unfavorable determination rendered by TAC.

■ Congressional intent to require athletes to exhaust their administrative remedies in regard to eligibility disputes appears evident given the scope of the Act, the specific statutory mechanisms that have been established for speedy settlement of these disputes, and congressional intent to establish a centralized, monolithic structure for coordinating amateur athletics. Further, the legislative history of the Act demonstrates that Congress made clear choices to keep disputes regarding the eligibility of amateur athletes to compete out of the federal courts. Congress eliminated from the final version of the Act, language that would have provided special jurisdiction in federal district courts for certain injunction proceedings, a provision that would have authorized arbitrators to issue subpoenas and petition federal district courts for enforcement, and a provision that would have provided special jurisdiction in district courts to enforce decisions of arbitrators. H.R.Rep. No. 1627, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S.C.C.A.N. 7478, 7481. It is also noted that no private right of action exists under the Act. *Michels v. U.S.O.C.,* 741 F.2d 155 (7th Cir.1984) (observing that legislative history shows that Congress removed provision that would have granted athletes a private right of action in federal court); *DeFrantz v. U.S.O.C.,* 492 F.Supp. 1181 (D.D.C.), *aff'd,* 701 F.2d 221 (D.C.Cir.1980).

■ Although there is no express statutory language regarding exhaustion of administrative remedies, it is evident from the elaborate scheme for handling disputes established by the Act, the well-developed provisions in the USOC Constitution and TAC bylaws for resolution of those disputes, and the legislative history, that Congress clearly intended to require exhaustion of administrative remedies by athletes whose eligibility is in dispute and that Congress desires that such disputes be kept out of the courts. Accordingly, the court concludes that the plaintiff, as an amateur athlete subject to the provisions of the Amateur Sports Act, was required to exhaust his administrative remedies with respect to his eligibility to compete, prior to filing a court action.[6]

■ Moreover, even were the court to engage in a balancing of the institutional interests in favor of exhaustion and the plaintiff's individual interests in seeking access to the courts, the plaintiff's interests do not favor bypassing the administrative remedies. First, in view of the emphasis on speedy adjudication, as contemplated by the Act, the

---

troversy, he/she shall refer the matter promptly to the Executive Director of the USOC for action under Article 9 of the USOC Constitution.
*See* Article 21B, Bylaws of The Athletics Congress of the U.S.A.

**6.** The plaintiff's libel and slander claim does not appear to be one that would have been resolved by exhaustion of his available administrative remedies. Inasmuch as the cause of action for libel and slander has been grounded upon allegedly false statements "published and republished to the worldwide news media" by the IAAF and TAC (Compl. ¶ 79), to the effect that plaintiff has

used steroids, and inasmuch further as the cause of action accrued on September 10, 1990, and October 20, 1990, the alleged dates of publication (Compl. ¶¶ 24, 36; Ex. 27), it is accordingly barred by the applicable one-year statute of limitations in that this action was not filed until June 22, 1992. W.Va.Code § 55–2–12(c); *Duffy v. Ogden Newspapers, Inc.,* 170 W.Va. 318, 294 S.E.2d 121 (1982). It is further observed from the factual allegations of the complaint that it was the IAAF, not TAC, that was responsible for the acts giving rise to the plaintiff's cause of action for libel and slander.

plaintiff would not have been confronted with the prejudice of undue delay had he pursued binding arbitration through the USOC. Nor is there any indication of irreparable harm that would have been suffered by the plaintiff had he sought binding arbitration. Following the adverse decision of TAC's Doping Appeals Board on April 22, 1991, plaintiff had the option of filing for binding arbitration within the six months provided for such requests under Article IX of the USOC Constitution, or seeking an emergency arbitration hearing which under Article IX could have been convened within forty-eight hours of his request. Having taken no steps to appeal the decision of TAC's Doping Appeals Board, plaintiff's own inaction served to waive his right to request binding arbitration under the Act.

■ Second, aside from his claim for libel and slander, the administrative remedy was adequate to grant the essence of the relief sought by plaintiff which centered on his eligibility to compete. The claims other than libel and slander are intertwined with a determination of his eligibility. Had plaintiff pursued his administrative relief and prevailed, the balance of his claims for relief would likely have been made moot.

■ Third, plaintiff has failed to make a sufficient showing that the administrative body was biased or predetermined on the issue of eligibility or that exhaustion would have been futile. In support of his position regarding the futility of exhaustion, the plaintiff relies upon the case of *Reynolds v. International Amateur Athletic Federation, et al.*, 841 F.Supp. 1444 (S.D.Ohio 1992). The circumstances presented in *Reynolds* are significantly different from those here and it cannot be logically said that the circumstances surrounding that one case would have rendered the plaintiff's efforts to exhaust his administrative remedies futile or non-availing. Indeed, a review of the facts of *Reynolds* reflects that Reynolds prevailed at each step of the administrative process until the final unfavorable decision by an arbitration panel convened at the request of the IAAF which, in turn, resulted in the issuance of restraining relief by the federal district court in *Reynolds*. It cannot be said that,

under the facts of this case, the plaintiff would not have ultimately prevailed had he pursued the administrative remedies available to him. Having chosen to abandon his claim by failing to pursue the arbitration of his dispute, he should not now be heard, under these circumstances, to complain that his efforts would have been futile.

■ Finally, it is well-recognized that, where administrative remedies are provided by federal law, a litigant must first exhaust those remedies before bringing his dispute to court. Likewise, where a statute provides for binding arbitration of disputes, a litigant must first seek relief through arbitration before resort to the courts for relief. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The plaintiff's failure to exhaust administrative remedies creates a basis for dismissal of his action. *Johnson v. Bergland*, 614 F.2d 415, 417–18 (5th Cir.1980) (per curiam); *Devereaux v. Amateur Softball Ass'n of America*, 768 F.Supp. 618 (S.D.Ohio 1991) (granting defendant's motion for summary judgment where athletes failed to exhaust administrative remedies available under the Amateur Sports Act); *Ivey v. Rice*, 759 F.Supp. 394, 400 (S.D.Ohio 1991) (dismissing action for failure to notify EEOC within required deadlines), *aff'd* 961 F.2d 1577 (6th Cir.1992); *Kubicki v. Brady*, 829 F.Supp. 906, 909 (E.D.Mich.) (*citing Ivey; Johnson*). Without a sanction for failing to comply with administrative remedies, those remedies would become meaningless and frustrate the administrative process. *Kubicki*, at 909. "[I]f the agency does not reach the merits of the complainant because the complaint fails to comply with the administrative procedures, the court should not reach the merits either. Otherwise, the complainant might be dilatory at the administrative level, knowing that he can get into federal court anyway." *Johnson*, 614 F.2d at 418.

V.

Courts have consistently determined that the Amateur Sports Act does not permit them to exercise jurisdiction to review decisions rendered by TAC and the USOC per-

taining to an athlete's eligibility to participate in amateur competition before the internal administrative processes established by virtue of the Act have been exhausted. *See Reynolds v. The Athletics Congress of the U.S.A.,* United States District Court, Southern District of Ohio, Case No. C–2–91–0003, at p. 9–16 and cases cited therein, *vacated and remanded, Reynolds v. Athletics Congress of the USA,* 935 F.2d 270 (6th Cir.1991) ("Because the appellant failed to exhaust his available administrative remedies, *see* 36 U.S.C. § 395 and Regulation 10 of The Athletic Congress of the U.S.A., prior to initiating the action, the district court was without subject matter jurisdiction"). *See also, e.g., Devereaux v. Amateur Softball Ass'n of America,* 768 F.Supp. 618 (S.D.Ohio 1991).

As did the *Reynolds* court in the early stages of that litigation, this court finds that the Amateur Sports Act and TAC regulations establish a comprehensive mechanism for the resolution of disputes which furnishes the athlete the opportunity to pursue his claim through essentially two different appellate levels within TAC, and, finally, the right to have the matter sent to binding arbitration. Inasmuch as the plaintiff is required to have exhausted his available administrative remedies under the Amateur Sports Act before seeking judicial review, his failure to have done so renders the court without subject matter jurisdiction over his claims. *See Reynolds v. Athletics Congress of the USA, Inc., et. al.,* 935 F.2d 270 (6th Cir.1992).

Accordingly, and for the reasons stated, it is ORDERED that the motion of the defendants TAC and WVA/TAC to dismiss the complaint be, and the same hereby is, granted.

It is further **ORDERED** that the motion of the defendant IAAF to dismiss the complaint be, and the same hereby is, granted.